[Civ. No. 4482. First Appellate District, Division One.—June 26, 1923.]

## PAULINE SLATER, Appellant, v. S. FRIEDMAN et al., Respondents.

[1] EMPLOYER AND EMPLOYEE—SCOPE OF EMPLOYMENT—LIABILITY FOR INJURY TO STRANGER.—The test to determine whether a master is liable to a stranger for the consequences of his servant's misconduct is to inquire whether the latter was doing what he was employed to do at the time he caused the injury complained of. If he was, the fact that he was not doing it in the way directed is immaterial; but if at the time he did the act which caused the injury he was not acting within the scope of his employment, the master is not liable.

---

1. Responsibility of owner of automobile when car is being used by servant or another for his own pleasure or business, notes, Ann. Cas. 1915D, 476; Ann. Cas. 1917D, 1001, 1008; Ann. Cas. 1918D, 241, 1134; 22 A. L. R. 1397; 37 L. R. A. (N. S.) 834; 47 L. R. A. (N. S.) 662; L. R. A. 1916A, 957.

[2] ID.—INJURY TO TAXICAB PASSENGER—LIABILITY OF OWNER—EVIDENCE.—In this action for damages for personal injuries sustained by plaintiff while riding as a passenger in a taxicab, due to the negligence of the driver, the evidence having shown that the act complained of was done while the driver was at liberty from his service and pursuing his own ends exclusively, the defendant owner of the taxicab could not be held responsible even though he afforded the means without which the accident might not have occurred.

APPEAL from a judgment of the Superior Court of Los Angeles County. Edwin F. Hahn, Judge. Affirmed.

The facts are stated in the opinion of the court.

E. Burton Ceruti and C. A. Jones for Appellant.

Griffith Jones and John J. Craig for Respondents.

TYLER, P. J.—Action for damages for personal injuries. The case was tried by the court sitting without a jury. Upon plaintiff's motion the action was dismissed as against the fictitious defendants and also against the defendant Robert Nuccio. After trial judgment was rendered in favor of defendant Friedman, and this is an appeal from the judgment and order denying a new trial.

The evidence shows in substance that defendant was, on the seventeenth day of July, 1920, engaged in the taxicab business in the city of Los Angeles, and had in his employ one Schlau, who operated his machine for hire; that about 11:45 P. M. on the day last mentioned the taxicab was standing on the corner of Fifth and Spring Streets with Schlau in charge, and a sign was attached to it indicating that the machine was for hire. The plaintiff, accompanied by her niece and a friend, engaged the services of the driver to convey the party for a consideration to the Santa Fe station. While proceeding on the journey a collison occurred and plaintiff was seriously injured, her skull being fractured, her body and limbs bruised, and her nervous system affected. It further appeared in evidence that the hours of the driver's employment were from 10 in the morning until 10 at night and that on the evening in question the driver had discovered that his employer had retired early

and he kept the taxi out longer than his instructions warranted him in doing for the purpose of his personal gain.

The trial court found the defendant to be the owner of the machine and that Schlau was employed by him to operate the same, but it further found that after 10 P. M. of the day of the accident the driver was not acting in the course of his employment, but was on a mission of his own, and judgment was accordingly rendered in defendant's favor. A motion for a new trial was made and denied.

As ground for reversal appellant complains of the action of the trial court in failing to find defendant to be a common carrier and that he operated the taxi for hire, and that Schlau was at the time of the accident his agent, servant, and employee. Such findings, it is claimed, are justified by the evidence. Complaint is also made of the express findings as being contrary, to the law and the evidence.

The fact as to whether or not defendant operated his taxi as a common carrier, or that he operated the machine for hire, are questions that are unimportant if the finding of the ultimate fact that the driver was acting beyond the scope of his employment is warranted by the evidence, and as we are of the opinion that the trial court was correct in its conclusion upon this subject, failure to find upon these questions cannot constitute error requiring a reversal, as the only effect thereof would be to establish the degree of care required of defendant.

The evidence upon the subject, as above narrated, is without practical conflict. It shows that Schlau was employed by defendant Friedman to operate the taxi, and that his hours of employment were limited from 10 o'clock in the morning to the same hour in the evening; that disregarding these express instructions, and for purposes of his own, about midnight of the day of the accident he undertook for hire for his own benefit to convey plaintiff to her destination. Under these circumstances it is the claim of plaintiff that as the driver had actual authority to represent his principal up to the hour of 10 o'clock in the evening, he had ostensible authority to represent him after that hour, as he was acting in the capacity for which he was employed.

No subject in connection with the law applying to the operation of automobiles has given rise to more views than the question of the responsibility of an owner for the acts

of his chauffeur and agents. The numerous cases upon the subject have been productive of much astute and interesting discussion in the courts, and eminent judges have differed widely in the application of the principles as applied to different cases. These cases are far from being in harmony on the subject, and it is not an easy task to reconcile them, and it would be a matter of supererogation to attempt to do so.

At the outset it may be stated that a master is only liable for the acts of a servant when such servant is acting within the scope of his employment. If he is so acting even against his master's express command, the master is nevertheless answerable for his acts, but if he is engaged on a mission of his own without being at all on his master's business, the master cannot be held liable. In other words, it is a well-established rule that if an act causing injury is done without the authority of the master, and not for the purpose of executing his orders or doing his work, then he is not responsible; but if it is done in the execution of the authority given by the master and for the purpose of performing what he was directed, then he is responsible, whether the act be willful or negligent (*McCarthy* v. *Timmins,* 178 Mass. 378 [86 Am. St. Rep. 490, 59 N. E. 1038]).

These rules are simple and well understood, the only difficulty being in their application to the facts of a particular case.

[1] The test to determine whether a master is liable to a stranger for the consequences of his servant's misconduct is to inquire whether the latter was doing what he was employed to do at the time he caused the injury complained of. If he was, the fact that he was not doing it in the way directed is immaterial. But if at the time he did the act which caused the injury he was not acting within the scope of his employment, the master is not liable (*Danforth* v. *Fisher,* 75 N. H. 111 [139 Am. St. Rep. 670, 21 L. R. A. (N. S.) 93, 71 Atl. 535]). There are two principal questions for determination in all cases involving the doctrine of *respondeat superior:* (1) the existence of the contractual relation, and (2) whether the act or omission was one performed or occurring within the scope of that relation. As above stated, in determining whether a particular act is done in the course of employment the first

inquiry that is presented is whether or not the servant was at the time engaged in serving the master. If the act is done while the servant is at liberty from service and pursuing his own ends exclusively, there can be no question of the master's freedom from all responsibility, even though the injury complained of could not have been committed without the facilities afforded to the servant by his relation to his master.

The doctrine as stated in *Morier* v. *St. Paul etc. R. R.*, 31 Minn. 351 [47 Am. Rep. 793, 17 N. W. 952], is frequently quoted in the cases upon the subject. It is there held that in determining whether a particular act is done in the course of the servant's employment, it is proper first to inquire whether the servant was at the time engaged in serving his master. If the act is done while the servant is at liberty from the service and pursuing his own ends exclusively, the master is not responsible. If the servant was at the time the injury was inflicted acting for himself and as his own master *pro tempore,* the master is not liable. If the servant step aside from his master's business for however short a time to do an act not connected with such business, the relation of master and servant is for the time suspended.

To the same effect is *Slater* v. *Advance Thresher Co.,* 97 Minn. 305 [5 L. R. A. (N. S.) 598, 107 N. W. 133], where the doctrine is briefly set forth to be that a master is not liable for injuries occasioned to a third party by the negligence of the servant while the latter is engaged in some act beyond the scope of his employment, although he may be using the instrumentalities furnished by the master with which to perform his duties. The expression "in the course of his employment" means, in contemplation of law, "while engaged in the service of his master" and nothing more. Beyond the scope of his employment, therefore, a servant is as much a stranger to his master as any third person (*Cunningham* v. *Castle,* 127 App. Div. 580 [111 N. Y. Supp. 1057]).

Whether the subject be viewed from the question of agency or of master and servant there can be no difference in principle, as here suggested, for while there is a distinction between an agent and a servant, this distinction in no sense impairs the application of the doctrine of *respondeat*

*superior* to both classes of individuals (*Evans* v. *Dyke Auto Co.,* 121 Mo. App. 266 [101 S. W. 1132]). ·

[2]   Applying these principles to the evidence in the case, the act here complained of must be held to have been done while the driver was at liberty from his service and pursuing his own ends exclusively, and defendant cannot therefore be held responsible even though he afforded the means without which the accident might not have occurred. (*Glassman* v. *Harry,* 182 Mo. App. 304 [170 S. W. 403]; *Stewart* v. *Baruch,* 103 App. Div. 577 [93 N. Y. Supp. 161]; *Robinson* v. *McNeill,* 18 Wash. 163 [51 Pac. 355]; *Christensen* v. *Christiansen* (Tex. Civ.), 155 S. W. 995; *Tyler* v. *Stephans, Admr.,* 163 Ky. 770 [174 S. W. 790]; *Evans* v. *Dyke Auto Co., supra; Gousse* v. *Lowe,* 41 Cal. App. 715 [183 Pac. 295]; *Steffen* v. *McNaughton,* 142 Wis. 49 [19 Ann. Cas. 1227, 26 L. R. A. (N. S.) 382, 124 N. W. 1016]; Davis on Motor Vehicles, sec. 216; 26 Cyc. 1537; *Mauchle* v. *Panama-Pacific I. E.,* 37 Cal. App. 715 [174 Pac. 400].)

In conclusion, it might be said that if there was any evidence in the record which showed in any manner that the driver had authority to operate the machine after his working hours for the benefit of defendant, or any circumstance from which such authority might be inferred, the case would present a different aspect, but there is none.   Nor is there any evidence upon which a claim could be made that plaintiff was relying upon the fact that the defendant owned the taxi, for there is nothing in the record to indicate that she had any knowledge upon this subject, nor is there any evidence from which knowledge of the actual ownership of the vehicle could be inferred.   In other words, there is no evidence upon which any question of estoppel might be raised other than the mere employment discussed.

For the reasons given the judgment is affirmed.

Richards, J., and St. Sure, J., concurred.