[Civ. No. 5819.   Third Appellate District.—October 20, 1937.]

MRS. JOHN HINER, Respondent, v. D. A. OLSON et al., Defendants; D. BLAINE MORGAN et al., Appellants.

Charles V. Barfield and Gilbert H. Jertberg for Appellants.

C. Ray Robinson, James D. Garibaldi and Willard B. Treadwell for Respondents.

THOMPSON, J.—The defendants, with the exception of D. A. Olson, have appealed from a judgment of $3,000 which was rendered against them for injuries sustained by the plaintiff as the result of negligence on the part of Olson while he was driving his automobile incident to his employment as traveling salesman for the drug firm of Morgan & Sampson.

The chief contentions are that the evidence fails to prove that Olson was the agent or servant of the appellants or that he was acting in the course of his employment at the time of the accident.

For eight or ten years prior to the accident Olson served as commercial salesman for the wholesale drug firm of Morgan & Sampson, whose place of business is at Alameda. The employment was based on an oral agreement. Olson was given the exclusive territory of the San Joaquin and Sacramento Valleys. He resided at Fresno. He devoted his entire time to selling drugs for the appellants in that territory, except that he carried certain preparations for other firms which did not compete with the line of goods sold by the appellants.

Mr. Olson spent most of his time traveling in his district to sell his commodities, but usually returned to his home in Fresno over week-ends. He drove his own Buick sedan automobile. He did not carry the drugs with him, but took orders therefor on printed blanks furnished by the appellants. He held no title to the property which he sold. The

name and address of the drug firm were printed on these blanks. Olson was authorized to sell goods on credit. The firm fixed the prices of all goods, and reserved the right to accept or reject the orders for goods and the applications for credit. In 2 Corpus Juris, page 593, section 229, it is said:

"A traveling salesman or drummer, unless expressly authorized or held out as having such authority, has authority only to solicit orders and transmit the same to his principal for approval."

The appellants advanced to Olson the sum of $5 per day for hotel expenses while he was away from home, in addition to $10 per day which they allowed in lieu of operation and maintenance costs on his machine. He was paid each week from 5 per cent to 10 per cent commissions on all accepted sales which he secured. He received approximately $220 per month for his services. In response to the question "Mr. Olson solicited orders *as the business agent for you*, did he not?" the defendant Mr. Sampson replied, "Just drug business."

Friday, October 19, 1934, Olson was returning from a business trip in the northern part of the San Joaquin Valley. He had passed through Modesto and Turlock going toward his home at Fresno. He reached Merced late in the afternoon. He parked his car at the curbing in front of the Woolworth Building. The Valley Drug Store and the Maze Drug Store were regular customers of his at Merced, but it does not appear that he solicited sales from them on that day. It does appear that he drank freely from a bottle of whiskey before he reached Merced. He had also taken three or four tablets the previous night to enable him to sleep. The appellants knew he was accustomed to drink to excess occasionally. They talked with him about that subject after the accident occurred.

At about 4:30 that afternoon the plaintiff's automobile was parked in front of the Woolworth Building in Merced near the Olson car. The plaintiff and her daughter were about to enter their machine. Mrs. Hiner had opened the left-hand door. She stood on the running-board with her hand on the steering-wheel, when, without warning, Olson suddenly backed with great force into her car. Her automobile was repeatedly bumped and shoved from its position at the curbing out into the street. She was knocked from the

running-board and thrown upon her back on to the paving. She was seriously injured by the fall. Mr. Olson handed his card to Howard Bunnell, who observed the accident. Olson then left Merced going toward his home. He arrived at Madera about 6 o'clock, where he was arrested on account of another accident in which his machine struck a gas station.

This suit was commenced in February, 1936. Olson's services with the appellants were terminated by them at about that time. Both Olson and the appellants were served with process. Judgment by default was rendered against him. He was not present at the trial. Upon jury trial a verdict of $3,000 was returned against the defendants. A joint and several judgment for that sum was accordingly rendered against them. From that judgment the defendants, with the exception of D. A. Olson, have appealed.

It is not contended the judgment is excessive.

The defendant D. A. Olson who caused the automobile accident in Merced was definitely identified as the man who was employed by the appellants to sell their drug compounds by means of his business card which was handed to Bunnell at that time, and by securing his name from the motor vehicle department as the owner of the machine from which the number had been taken at the time of the accident.

The fact that Olson handled drug accessories for companies other than that of the appellants at the time of the accident does not exempt the appellants from liability for his negligence under the circumstances of this case. It appears that Olson's services as salesman for the appellants' drug compounds in no way interfered with his occupation or duties in soliciting sales of non-competing commodities for other companies. These other companies might also become jointly liable for his negligence on that occasion provided he was also engaged in soliciting sales for them. They are, however, not parties to this action. No motion was made to join them as party defendants.

A person may act at the same time as agent for two or more independent employers, either by consent or otherwise, provided his services for the respective principals do not conflict, and when that relationship toward others is not in conflict with the terms of his employment. (*Rosander* v. *Market St. Ry. Co.*, 89 Cal. App. 721, 735 [265 Pac. 541];

*Goss* v. *Pacific Motor Co.*, 85 Cal. App. 455, 456 [259 Pac. 455] ; 1 Restatement of the Law, p. 498, sec. 226.) In the authority last cited it is said in that regard:

"A person may be the servant of two masters, not joint employers, at one time as to one act, provided that the service to one does not involve abandonment of the service to the other."

It is apparent that a traveling salesman may represent several independent employers at the same time, soliciting orders from the same prospective purchasers on the same occasion, for the sales of different commodities which in no way conflict with the highest duty which he may owe to a particular employer. Under such circumstances, his negligence exercised in the course of such employment may render each of his independent employers liable for injuries sustained thereby.

We are of the opinion the evidence in this case indicates that Olson was engaged as the agent or servant of the appellants in soliciting sales in the San Joaquin and Sacramento Valleys of drug compounds and accessories in their behalf. He had been working regularly for them in that district in that capacity for eight years. The circumstances of this case appear to clearly distinguish their relationship from that of an independent occupation. In 1 Mechem on Agency, second edition, page 30, section 48, reciting the circumstances which indicate the relationship of agent or servant as distinguished from an independent occupation of selling personal property, it is said:

"The essence of *agency to sell* [personal property] is the delivery of the goods to a person who is to sell them, not as his own property but as the property of the principal, who remains the owner of the goods and who therefore has the right to control the sale, to fix the price and terms, to recall the goods, and to demand and receive their proceeds when sold, less the agent's commission, but who has no right to a price for them before sale or unless sold by the agent."

In the present case the circumstances indicating a relationship of master and servant or principal and agent between Olson and the appellants are much stronger in favor of the existence of an agency. The goods were not delivered to Olson for sale. He held no title to the goods. He merely solicited sales by the use of advertising literature. He took

orders for the drugs upon blanks furnished to him by his employer, upon which were printed their firm name and address. These orders were subject to the appellants' approval. They directed him to extend credit upon such sales. They fixed and determined the prices to be charged. They limited his territory. They paid his hotel bills while he was on the road soliciting sales. They paid him a fixed sum in lieu of his automobile operating and maintenance expenses. They merely paid him agreed commissions on the sales which he secured. They employed and discharged him. In fact, they undoubtedly had the exclusive right to control the manner of Olson's operations in their behalf in every respect, except that he was at liberty to solicit trade in his allotted district at any time on any day when he desired to work and he did use his own machine. The existence of an agency which is created by oral agreement may be inferred from circumstances which satisfactorily indicate its existence. (21 R. C. L. 820, sec. 6; 1 Cal. Jur. 716, sec. 21.) We are of the opinion the circumstances of this case adequately support the implied finding of the jury that the relationship of principal and agent or master and servant existed between the appellants and D. A. Olson at the time of the accident. The plaintiff was not bound by the declaration of the defendant, Sampson, that they were not employers of the traveling salesman, Olson. (Sec. 2055, Code Civ. Proc.)

The cases of *Crouch* v. *Gilmore Oil Co., Ltd.*, 5 Cal. (2d) 330 [54 Pac. (2d) 709], and *Counihan* v. *Lufstufka Bros. & Co.*, 118 Cal. App. 602 [5 Pac. (2d) 694], upon which the appellants rely, are not in conflict with what we have previously said regarding the evidence of agency. Those were both appeals from orders granting motions for nonsuit. Those cases do contain some circumstances similar to the facts in the present case. But they do not contain all of the circumstances of this case which furnish persuasive evidence that the defendants held the exclusive right to control the actions of their commercial traveler in all respects except the time when he was required to work, and the fact that he drove his own car. In this case the defendants did assign and limit his territory; they did pay his operating expenses; they fixed the prices of their commodities and dictated the terms of sales. From the circumstances of this case, the

jury certainly had the right to infer that he was acting as the agent and servant of the appellants. With this province of the jury, under such circumstances, we may not interfere on this appeal.

It was not reversible error to have permitted the witness Irma Keil, over the objection of the defendants, to testify to the extra-judicial statement of the absent defendant, Olson, that he said to Mr. Bunnell immediately after the accident occurred that "He was D. A. Olson of Fresno, that he was employed by a drug company." The identity of Olson as the traveling salesman who was involved in the accident was otherwise fully established by evidence from the Motor Vehicle Department that he was the owner of the car which bore the number taken from his machine at the time of the accident. In fact, his business card identified him. There is no doubt of his identity. Moreover, the objectionable statement does not declare that he was employed by the defendants' drug firm. He merely said he was "employed by *a* drug company". It will be recalled that he represented other drug companies. The word "employed" should not be given undue emphasis. We are of the opinion that statement was harmless.

It is true that an agency may not be proved by extra-judicial declarations of the alleged agent, although, when he is called as a witness, his statements regarding the nature and extent of his employment are competent. It is said in *Kast* v. *Miller & Lux,* 159 Cal. 723, at page 728 [115 Pac. 932, 933]:

"While the rule is well established that the testimony of an agent sworn as a witness in a case when the question of his agency is involved is competent to establish it and its extent and nature, as any other witness, it is equally well established that *extra-judicial statements* or declarations *in pais* of one assuming to act as agent are inadmissible and incompetent to establish the fact of agency."

We are of the opinion the existence of the agency was satisfactorily established in this case by the surrounding circumstances, independently of the foregoing extra-judicial statement of Olson, and that this ruling was therefore harmless.

The most serious question in this case is whether the traveling salesman was acting in the course of his employ-

ment at the time of the accident. It may not be questioned under the circumstances of this case that Mr. Olson may be deemed to have been acting in the course of his employment as traveling salesman while he was driving to and from his work. To reach his prospective purchasers in his district and to return home were necessarily incident to his employment. In support of the implied finding of the jury that he was engaged in the course of his employment at the time of the accident, it appears from the evidence, together with the reasonable inferences therefrom, that immediately prior to the accident he had been canvassing the northerly portion of his assigned district to sell drugs for the appellants; it was the week-end, and he was returning to his home at Fresno; he had passed through Modesto and Turlock before he reached Merced, where he stopped, and where he had regular drug customers; after the accident he continued on his way to Fresno, reaching Madera about 6 o'clock that evening; his entire time was devoted to soliciting trade in his district, except over the week-ends; he earned and was paid by appellants an average of $220 per month; in an effort to show that he was then engaged in the course of his employment and that he had then been soliciting orders for his employers, the defendant Sampson was asked on cross-examination for their correspondence with Olson during that period, and replied that the correspondence had been destroyed. This colloquy occurred:

"Q. You could get it [the correspondence] ? . . . A. Not during this [that] year, these records are destroyed . . . Q. You have in your files, records of the payments for the week involved here, October 19th, 1934, have you not? A. Not today, no sir. Q. You had them prior to the time that they were destroyed? A. Yes sir.''

It may or may not be true that the defendants' records showed that Olson actually forwarded to them orders for drugs secured by him from customers in his district on that very expedition during the week when this accident occurred. Every presumption indicates that he was actually returning from a business trip in the northern part of his district. Evidence peculiarly within the control of an adverse party which is wilfully suppressed, is deemed to be prejudicial to his cause. In 10 California Jurisprudence, page 779, section 86, it is said:

"When the evidence tends to prove a material fact which imposes a liability on a party, and he has it in his power to produce evidence which, from its very nature, must overthrow the case made against him if it is not founded on fact, and he refuses to produce such evidence, a presumption arises that the evidence, if produced, would operate to his prejudice, and support the case of his adversary."

While the evidence in this case that the traveling salesman was actually engaged in the performance of services for the appellants at the time of the accident is not strong, we are of the opinion the circumstances furnish substantial evidence of that fact sufficient to support the implied finding of the jury in that regard.

The judgment is therefore affirmed.

Plummer, J., and Pullen, P. J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on November 19, 1937, and the following opinion then rendered thereon:

THE COURT.—The appellants challenge our statement of facts that Olson, who was involved in the accident at Merced, was identified as the same D. A. Olson who was employed as traveling salesman for the appellants; that certain drug firms in Modesto were their regular customers; that Olson was engaged in selling drugs in the San Joaquin district just prior to the accident, or that he was then returning to his home at Fresno for the week end. Sampson, one of the appellants, testified that D. A. Olson had been their drug salesman for eight years; that he had the exclusive agency in the San Joaquin and Sacramento Valleys; that he averaged about 22 days each month canvassing his district outside of his home city of Fresno, and that they allowed him on that basis $5 per day in lieu of hotel expenses each day he spent away from his home city. We assume he was on his way to Fresno to spend the week end because that was his home. He had been in the upper portion of the San Joaquin district and was on his way to Fresno when the accident occurred on the afternoon of October 19, 1934. The calendar shows that day was Friday. A court will take judicial notice of the day of the week from the date as shown by the calendar.

The record shows Sampson knew they had two drug customers at Merced. Regarding the Maze Drug Store at Merced, he testified:

"Q. Do you know whether there was an account there [at the Maze Drug Store] that Mr. Olson called upon from time to time? A. Yes, he called upon them from time to time. . . . Q. You know the Valley Drug Store at Merced and their account? A. Yes sir. Q. Mr. Olson called upon them, did he not? A. Yes sir."

The identity of Olson who was involved in the accident as the salesman who worked for the appellants is conclusively established. At the time of the accident he handed his card to Mr. Bunnell. It contained the name of Olson. Bunnell also wrote the number of Olson's automobile on that card and handed it to Mrs. Irma Keil, the plaintiff's daughter. Mrs. Keil testified: "Mr. Bunnell asked him his name and he said he was D. A. Olson of Fresno, that he was employed by a drug company." Hubbard, a traffic officer, ascertained from the state motor vehicle department that Olson's automobile number 4 L 5526 belonged to David A. Olson of Fresno. The character of the car was identical. It was a Buick. The residence was the same. Hubbard also got his name from letters which Olson carried in his pocket and from his driver's license. Other evidence confirms the identity of Olson as the same man who worked for the appellants. We have no doubt of that fact. The identity of persons from the identity of their names is presumed. (Sec. 1963, subd. 25, Code Civ. Proc.)

With the modification of the opinion above suggested, the petition for a rehearing is denied.

A petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on December 16, 1937.