[Civ. No. 6119.   Third Appellate District.—May 19, 1939.]

HOMER A. PHILLIPS et al., Appellants, v. V. A. LARRA-
   BEE et al., Defendants; SINGER SEWING MACHINE
   COMPANY (a Corporation), Respondent.

George L. Popert and Butler, Van Dyke & Harris for Appellants.

Gerald M. Desmond for Respondents.

THE COURT.—Plaintiffs brought this action against defendants Larrabee and the Singer Sewing Machine Company, a corporation, for injuries to person and to property sustained on the 13th day of November, 1936, near the city of Sacramento.

The complaint alleged that at all times mentioned defendant V. A. Larrabee was an employee and agent of the Singer Sewing Machine Company, a corporation, and was at the time of the collision acting within the scope of his employment, and that defendant corporation and Larrabee were jointly liable for the damages suffered by plaintiffs, one of whom suffered personal injuries, and the other damage to his car. These allegations were denied by the Singer Sewing Machine Company and by Larrabee. The case was tried before the court sitting without a jury, and the court found Larrabee liable for damages, which judgment is now final, but also held it was not true that defendant Larrabee was an employee of the defendant Singer Sewing Machine Company at the time of the accident, but on the contrary he was an independent contractor so far as the Singer Sewing Machine Company was concerned. On this finding, and the conclusions drawn therefrom, a judgment was entered in favor of the Singer Sewing Machine Company exonerating it from liability. A motion for a new trial upon this issue was presented and denied. It is from that order and the judgment that this appeal is taken, and the sole question here is whether or not the court was justified in finding that Larrabee was not an agent of the company.

The testimony bearing upon this single question is comparatively brief. On the 13th day of November, 1936, defendant Larrabee, while driving his automobile on Fair Oaks Boulevard near the city of Sacramento, collided with another car belonging to Jasper P. Stilson and being operated by Homer A. Phillips.

Mr. J. O. Hubbard testified that for some time prior to November 2, 1936, he was the local sales manager for the

Singer Sewing Machine Company in the territory embracing Sacramento County. On October 14, 1936, as such local sales manager, he entered into a written contract with Larrabee whereby Larrabee became a probationary salesman for the company. Probationary salesmen are put into the field under the supervision, direction and guidance of a trained salesman that they may learn salesmanship and the conduct of its business according to the methods of the Singer Sewing Machine Company. The agreement entered into between the company and Larrabee covered the probationary period only. These salesmen were paid commissions on sales of products and collections of accounts made by them, with a minimum guarantee of $12 a week. The salesman was required to devote such time and attention as might be necessary to properly fulfill his obligations under the agreement, and to sell and lease sewing machines, vacuum cleaners and supplies belonging to and furnished by the company for such purpose; to collect such accounts as might be turned over to him by the company, and to personally assume and pay all expenses incurred by him arising out of the transactions of the business he obtained. He was further obligated to replace lost or damaged goods; to make detailed reports from time to time; to keep segregated the funds collected and to pay the same to the company, and other duties particularly set forth in the written agreement.

Larrabee went to work as provided in the agreement as a probationary salesman, under the guidance and direction of a regular salesman. He was in the field as such probationary salesman from October 14th to October 31st. At the end of that time he was told by Hubbard that his contract as probationary salesman was being discontinued, and he was asked to return the machines in his possession. On November 2d, Hubbard became district manager, and a Mr. Wright succeeded Hubbard as local sales manager.

On November 2d Wright reported to Hubbard that Larrabee still had in his possession three sewing machines. Hubbard immediately got in touch with Larrabee and directed him to return the property of the company. Hubbard related what then took place as follows:

" . . . he told me regarding the dirty deal he thought he was getting, not so much from my hands as at the trainer's that had been with him; that he was a poor salesman in his estimation, that he himself had closed some of the deals they

were on, and so the criticism, from one who was starting, to one who has been in the field for quite some time, I called his bluff—I says, 'All right, you go out and sell those people.'
. . .

"Q. But Mr. Hubbard, if he had succeeded in selling more machines than he had in his possession, you would have gladly furnished him others to sell, wouldn't you? A. I would not. . . .

"Q. Then, I assume that you were only anxious to have him sell those persons whom he had contacted as a probationary salesman? A. That is right.

"Q. Then, we will get right down to the facts,—I asked you a few moments ago, when you told him to go out and sell those machines in his possession to those people, you had in mind the property of your company which you had theretofore delivered to him under this contract as probationary salesman, and those prospective customers whom he had theretofore contacted under his contract as such, didn't you? A. Yes, sir."

Elsewhere in his testimony, however, Mr. Hubbard said he did not intend to limit Larrabee's activities to those persons only upon whom he had personally called, but to any prospect in the restricted territory. Larrabee was to be paid the regular salesman's commission for any articles sold, and was to furnish his own transportation and pay all his own expenses.

Mr. Larrabee testified as to the conversation with Hubbard of November 2d:

"A. I think I made a little complaint to him about my trainer; I mentioned on one occasion to him where we had put on a demonstration, and he told me—I don't think I mentioned this to him at the time, but he told me if I wanted to that I could go to the places where I had prospects and canvass them out and see if I could make a sale, if I wanted to.

"The Court: Tell me that again.

"A. He told me I could go to the ones I had previously canvassed, that is, prospected, and that I could close the sale on my own, if I wanted to. . . . That was when I complained to him about canvassing the ones we had just canvassed, because I told him I didn't think it would be possible, because if we could have made a sale we would have made it when

we canvassed them the first time; and, at that time if my recollection is right, Mr. Hubbard told me that if I wanted to I could go anywhere within the zone that was to be vacated; they hadn't let the man out of this zone, that Mr. Carnahan was going to be the trainer for this zone, but I could go anywheres within that zone if I wanted to, and see if I could make a sale, and he would pay me the regular commission on the sale.''

As Larrabee testified, he went out at first with a little enthusiasm and canvassed different homes, but without success, and while he got a few promises he felt he was not meeting with any results, and toward the last did not work very hard.

It is the contention of appellants that as a matter of law the relationship of principal and agent was established. Respondent, on the other hand, contends the evidence justifies a finding that Larrabee was an independent contractor.

In determining the relationship of Larrabee and the Singer Sewing Machine Company it is necessary to examine the agreement or contract of employment between them and to keep in mind the distinction between an employee and an independent contractor. ▮▮▮ A contract of employment is a contract between an employer and an employee whereby the employee is engaged to do something for the benefit of the employer or a third person. (Sec. 2750, Labor Code.)

An independent contractor has been defined as one who, in rendering services, exercises an independent employment or occupation and represents his employer only as to the results of his work, and not as to the means whereby it is to be accomplished. (*Green* v. *Soule,* 145 Cal. 96. [78 Pac. 337].) Naturally the determination of the question here presented depends upon the particular facts involved, and except for a statement of the general rules, particular cases are not very helpful.

▮▮▮ Examining the relationship before us we find that the property to be sold belonged to the Singer Sewing Machine Company, and that the area or zone in which Larrabee was to operate was defined and his activities were restricted to that territory. It is also very definite in the record that for any violation of instructions by Larrabee, Hubbard, as district manager, had the power to dismiss Larrabee and retake all of the stock from him. As Mr. Hubbard testified:

"Q. As a matter of fact from the time you held that conversation with Mr. Larrabee . . . you recognized that at any time and for any reason you could have sent for Mr. Larrabee and taken those machines away from him? A. I could have gotten them at any time I wanted to.

"Q. In other words you had that control over your products in his possession, didn't you? A. I had control over our products, yes."

It was also testified by Hubbard that all proceeds from the property sold by Larrabee were to be delivered by him to the company and the company would then pay the commission.

During Larrabee's probationary training period the company was protected by a surety bond. This bond was not cancelled at the end of that period nor was the bonding company notified of any change in relationship during the succeeding interval of time from November 2d to November 13th.

Respondent emphasizes in its brief that after the termination of the probationary period no orders were given Larrabee as to whom he should call upon, or his hours of work, or his methods of salesmanship; but Hubbard testified with respect to his powers with regard to Larrabee, that if for any reason the company wanted the machines he could have sent for Larrabee at any time and have taken them in. In other words, Hubbard, acting for the company, had control over the company products at all times. ■ The test of authority is not its use but the existence of the power to exercise it. As said in *Los Flores School Dist.* v. *Industrial Acc. Com.*, 13 Cal. App. (2d) 180 [56 Pac. (2d) 581]:

"Several important rules are well recognized for determining whether a laborer is an employee or an independent contractor. Where there is an employment, the employer has the right to direct and give orders to the employee concerning the means and methods of work. It is the existence of this right, and not its use or lack of use that is important. An employer has the right to terminate the employment before the work is completed, which, in the case of an independent contractor would amount to a breach of contract if done without just cause. An employee may quit, but an independent contractor is legally obligated to complete his contract."

In *Chapman* v. *Edwards,* 133 Cal. App. 72 [24 Pac. (2d) 211], the court said:

"The power of the employer to terminate the employment at any time is a strong circumstance tending to show the subserviency of the employee, since it is incompatible with the full control of the work usually enjoyed by an independent contractor. Perhaps no single circumstance is more conclusive to show the relationship of an employee than the right of the employer to end the service whenever he sees fit to do so."

To the same effect is *Cook* v. *Sanger*, 110 Cal. App. 90 [293 Pac. 794], where it is pointed out the power to discharge made obligatory the carrying out of any instructions given, or in other words, the right to discharge involves the right of control.

That the Singer Sewing Machine Company looked upon the relationship as that of employer and employee and not as that of an independent contractor is also emphasized by the informality of the arrangement out of which the relationship arose. No details as to the respective duties and obligations of one toward the other were mentioned as would be expected in entering into a contract with an independent contractor. Here the employer, knowing it had the right of control and immediate discharge, did not concern itself with details.

■ Inasmuch, also, as the company has asserted that Larrabee was an independent contractor, the burden of proof is upon the party raising such issue. (*Hartford etc. Co.* v. *Industrial Acc. Com.*, 93 Cal. App. 313 [269 Pac. 733].)

■ It is true that the compensation of Larrabee was based upon commissions, but that of itself does not create the relationship of an independent contractor, nor could Larrabee, as is the right of an independent contractor, have delegated to others the carrying out of his contract. It called for his personal services.

In *Hiner* v. *Olson*, 23 Cal. App. (2d) 227 [72 Pac. (2d) 890, 73 Pac. (2d) 945], it was held under the facts of that case that the relationship there established was one of agency and quoted from 1 Mechem on Agency, second edition, page 30, as follows:

"The essence of agency to sell personal property is the delivery of the goods to a person who is to sell them, not as his own property but as the property of the principal who remains the owner of the goods and who therefore has

the right to control the sale, to fix the price and terms, to recall the goods, and to demand and receive their proceeds when sold, less the agent's commission, but who has no right to a price for them before sale or unless sold by the agent.''

In *Fischer* v. *Havelock*, 134 Cal. App. 584 [25 Pac. (2d) 864], a situation very similar to that here involved was considered, and the elements distinguishing an agent from an independent contractor were considered, and assists considerably in determining this case. It was there again stressed that the right to control was one of the governing elements of agency.

Larrabee, it is to be remembered, had just completed a three weeks' training course in policy and salesmanship under a trainer furnished by the company and he knew the rules of the company. It was not necessary to instruct him in those details.

In the instant case Larrabee did not buy and resell the products of the Singer Sewing Machine Company. He merely sold the property of the company. He could not fix the price, dictate the terms, extend credit or pass upon security if taken. In making a binding sale he acted for his principal. If Larrabee had attempted to proceed in any other manner or had failed or refused to carry out any instructions given him as to the manner of his operations he could have been immediately discharged.

Larrabee testified that he was told by Hubbard that he could go to the ones he had formerly canvassed and close the sale on his own if he wanted to. Respondents stress the words ''if he wanted to'', but that is not material, for there is no question but what he wanted to, and did attempt to make the sales.

Respondents .rely strongly upon three cases: *Bohanon* v. *James McClatchy Pub. Co.*, 16 Cal. App. (2d) 188 [60 Pac. (2d) 510]; *Counihan* v. *Lufstufka Bros. & Co.*, 118 Cal. App. 602 [5 Pac. (2d) 694]; *Barton* v. *Studebaker Corp.*, 46 Cal. App. 707 [189 Pac. 1025].

Each of these cases may be distinguished upon the facts. *Bohanon* v. *James McClatchy Pub. Co.*, *supra*, grew out of a collision between two automobiles, one driven by plaintiff and the other by Smith, who was at the time delivering newspapers published by the McClatchy Company, in accordance with the terms of a written agreement entered into between

Smith and Engebrecht, who had a contract with the Mc-Clatchy Company whereby he agreed to distribute papers within the prescribed area under certain terms and conditions. The trial court held that both Smith and Engebrecht were employees of the publishing company. Upon appeal the agreement between the publishing company and Engebrecht was held to establish the relationship of independent contractor and not master and servant, but the facts there involved are so different from those here presented that this case is not particularly helpful.

In *Counihan* v. *Lufstufka, supra,* the court held there was no relationship of master and servant as there was no right of control reserved.

In *Barton* v. *Studebaker Corp., supra,* there was no control exercised over the salesman by the company, nor did he have any property of the company in his possession. He could employ others to assist him in selling cars for the company and he was apparently not restricted to selling the products of the Studebaker Corporation only. Under these and other elements pointed out in the opinion, Barton was held to be an independent contractor.

From the foregoing it appears as a matter of law Larrabee was not acting for himself but as agent for defendant Singer Sewing Machine Company.

The judgment is reversed and the trial court directed to enter judgment against Singer Sewing Machine Company, and in favor of Homer A. Phillips in the sum of $7,500, and the sum of $138 in favor of Jasper P. Stilson, such amounts having been fixed by the trial court as the amounts for which Larrabee, the joint tort-feasor with the Singer Sewing Machine Company was liable. It is so ordered.

A petition by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on July 17, 1939.