[Civ. No. 11524.  First Dist., Div. One.—June 20, 1941.]

ALICE R. CRAGUN et al., Plaintiffs and Appellants, v. CONSTANTINE A. KROSSOFF et al., Defendants; SIGMUND EISNER COMPANY, WESTERN (a Corporation), Respondent; W. C. DAVIS, Cross-Complainant and Appellant.

Sullivan & Ferrario, A. K. Whitton and Johnson & Harmon for Appellants.

Redman, Alexander & Bacon and Herbert Chamberlin for Respondent.

WARD, J.—Appeals by plaintiffs Alice R. Cragun and Cal Cragun, wife and husband, and cross-complainant W. C. Davis, from judgments severally entered against them in a personal injury action in favor of defendant and cross-complainant Sigmund Eisner Company, Western, a corporation. Since the rendition of the judgment, Myrtle Davis, administratrix of the estate of W. C. Davis, has been substituted as cross-complainant and appellant.

Mr. and Mrs. Cragun were riding with appellant Davis in his car when it collided in an intersection of streets in the city of Oakland with an automobile owned by R. J. McDonald and operated by Constantine Krossoff. The Craguns, Davis and McDonald were injured, and both automobiles were damaged. Mr. and Mrs. Cragun filed an action for personal injuries, medical expenses, etc., against Krossoff and McDonald, who answered, the latter with the permission of the court also filing a cross-complaint against Davis, praying for damages for personal injuries and expenses incurred in the repair of his car. Davis answered this cross-complaint and in turn cross-complained against McDonald and Krossoff, seeking to recover for personal injuries and for damages to his automobile. The Craguns amended their complaint to include Sigmund Eisner Company, Western, as a defendant, and Davis added the Eisner Company as a defendant in his cross-complaint. When all of the answers to the complaints, amended complaints and amended cross-complaints had been filed, the matter was tried without a jury.

The court found negligence on the part of Krossoff who was operating McDonald's car at the latter's request. It also found "That at the time and place of the aforesaid accident defendant R. J. McDonald was not in the course of or in the discharge of any duty or duties of his employment as a salesman upon commission for said Sigmund Eisner Company, Western, a corporation, or otherwise; that defendant R. J. McDonald in requesting and employing defendant

Krossoff to drive the said automobile of defendant R. J. Mc-
Donald from Tracy, California, to San Francisco, California
on said 16th day of January, 1937, during the course of
which trip the aforesaid accident and collision occurred, was
not acting for or on behalf of defendant Sigmund Eisner Com-
pany, Western, a corporation, and defendant McDonald was
without any authority whatsoever to employ or permit de-
fendant Krossoff or any other person to drive or operate
said automobile for or on behalf of said defendant Sigmund
Eisner Company, Western, a corporation, on said trip; that
said trip from Tracy, California, to San Francisco, Cali-
fornia, during the course of which the aforesaid accident
and collision occurred, was made solely for the personal and
individual interest of defendant R. J. McDonald, and was
not made at the request of nor in the interest of nor upon
any business of defendant Sigmund Eisner Company, West-
ern, a corporation.'' Judgment was entered in favor of
plaintiffs Alice R. Cragun and Cal Cragun and cross-com-
plainant Davis against Krossoff and McDonald, and in favor
of Sigmund Eisner Company, Western, against the plaintiffs
and cross-complainant.

The evidence disclosed that McDonald was a traveling sales-
man for cross-defendant Sigmund Eisner Company, Western,
having its principal place of business in New Jersey and a
branch office in San Francisco. McDonald's duties were to
place clothes, the output of the company, in stores through-
out territory assigned to him in California. This territory
commenced at Stockton or Manteca on the north and extended
to Bakersfield on the south, and he covered it approximately
once a month, without, however, having any specified route
or regular or definite working hours, although he usually
kept the San Francisco office advised personally or by mail
as to his itinerary. McDonald used his own automobile
for these trips, and it in fact appears that respondent com-
pany understood he would, although he had the privilege of
selecting his own mode of conveyance. When he commenced
selling for the company, no mention was made of the period
of his employment, and he was paid no regular salary, merely
a commission. He was, however, allowed a drawing account
of $50 a week and if his commissions did not equal this ad-
vance his account was debited the difference. He continued
to receive this weekly advance during his several weeks of

illness following the accident. The company furnished him with sample cases of goods to take on his trips, and he replenished the cases from time to time from the stock of the company. At the time of the accident he had these cases with him. There is no evidence in the record that McDonald ever delivered merchandise, extended credit or made collections. Week ends, McDonald ordinarily returned from the valley trip to San Francisco, usually going to the same hotel, from which he was registered as a voter, and where he paid only for the time he occupied the room assigned him. He testified that these trips to San Francisco might be on personal business; that if he happened to be in San Francisco during business hours, he would report to the company, but that his written reports of sales, etc., did not have to be made at any time or place; that they could be made by mail. He further testified that while he fixed his own itinerary, he would have changed it to comply with any request or direction of his employer to call on a particular customer; that on completing his territory on the north, he never varied the route taken to San Francisco. On the day of the accident, Saturday, McDonald called on a customer at Manteca, the northmost town of his route, and they had several drinks. On resuming his trip north, he was given a "tag" at Tracy for reckless driving; his car was taken from him, parked near the court house and he was advised to get something to eat. He testified that this occurrence made him uneasy about driving the rest of the way to San Francisco; that he engaged and paid Krossoff to drive for him, and it was while Krossoff was driving that the accident occurred.

The finding that McDonald was not in the course of or in the discharge of any duty or duties of his employment as a salesman for respondent company at the time or place of the accident may be sustained upon reasonable inferences drawn from the evidence unless the proof presented establishes as a matter of law that he was at the time acting within the scope of his employment.

Appellants contend that in determining the liability of respondent company the negligence of defendant Krossoff must be regarded as that of the defendant McDonald. This contention need be considered only if it should be determined that McDonald was in the course of his employment at the time and place of the accident. Appellant also presents as

one of the questions on appeal: "Was the status of the defendant McDonald that of an employee for the respondent company as distinguished from an independent contractor?" There is no direct finding on this question, and it does not appear that a finding on the subject was necessary in view of the finding that McDonald was not in the course of or in the discharge of any duty of "his employment as a salesman upon commission" during his journey from Manteca to San Francisco. If the evidence supports the finding that McDonald was not acting in the course of his employment as an agent, servant or employee of respondent company at the time of the accident, then appellants' contentions have been met. It is not necessary to consider the numerous opinions written differentiating acts performed within or without the scope of employment. It is sufficient to say that each case was decided upon its own peculiar facts and circumstances.

The question for decision here may be stated briefly: In driving from Tracy, or even Manteca, through Oakland toward San Francisco was McDonald doing anything in furtherance of his employment as a salesman on a commission basis or was he "at liberty from the service and pursuing his own ends exclusively"? (*Slater* v. *Friedman,* 62 Cal. App. 668, 672 [217 Pac. 795].) His business activity for the week had ended; he had driven in a car of which he "was the registered owner but the finance company had a good part of it" beyond the zone of his employment; in passing through Tracy he had received a "tag" for driving his car in a "wobbly" fashion and had been advised to get something to eat; he had taken at least a glass of wine at Tracy and believed it advisable to pay someone to operate the car to his destination. The purpose of the proposed trip to San Francisco was not in the interest of respondent company. McDonald testified: "Q. You intended to call at the office on the following Monday morning, did you not? A. I don't believe so, no sir. Q. Except for the accident I mean you would have called at the office on the following Monday morning? A. No sir, that was not my usual custom. My custom in coming in on Saturday was to go directly back on the road on Monday morning. Q. You got your check every Monday morning at the office, didn't you? A. No sir. It was mailed to me from the office." McDonald was not charged with the duty of returning on week ends or other-

wise to report to respondent company's office at San Francisco.

The many cases cited by appellants distinguishing between an employee and an independent contractor are not of assistance to them. The present case was not decided by the trial court upon that distinction; that is, that McDonald was an independent contractor. It held that McDonald was an employee, and classified his employment with respondent company as "salesman upon commission", but held that at the time of the accident he was not in the course of his employment. It is appellants' theory that a travelling salesman is in the course and scope of his employment for the entire period of time between starting from and returning to his home or business headquarters. This general rule has found approval notably in *California C. I. Exchange* v. *Industrial Acc. Com.*, 5 Cal. (2d) 185 [53 Pac. (2d) 758], but in each case cited by appellants facts and circumstances showed that the employee was on a roving commission, or had made a necessary stop, overnight or otherwise, in the interest or advancement of the employer's business, while en route to his home or place of business. In the present case it is true that McDonald voted in San Francisco and that usually he stopped at the same hotel if a room was available, but in doing so he was no more than a transient guest, and it was not necessary that he should come to San Francisco for the business of his employer. The purpose of the week end trips was primarily for pleasure as distinguished from business. He could, without injury to the interests of his employer, have stopped at any intervening city or town or left his regular route for other parts had his pleasure so dictated. He was a free lance, subject to no control by his employer from the time he left Manteca. His return to San Francisco was a mere incident, not necessarily or at all connected with his employment.

In many respects *Ryan* v. *Farrell*, 208 Cal. 200 [280 Pac. 945], and *Hiner* v. *Olson*, 23 Cal. App. (2d) 227 [72 Pac. (2d) 890, 73 Pac. (2d) 945], are similar to the present case. In the Hiner case the circumstances furnished "persuasive evidence" that the travelling salesman at the time of the accident there involved was under the control of his employer. On appeal there was evidence to substantiate the conclusions

reached by the trier of the facts. In the present case there was persuasive evidence to convince the trier of the facts not that the salesman was an independent contractor, for he was not engaged in business of his own, but that he was an employee, although not engaged in the business nor under the control of his employer at the time of the accident. There was evidence to indicate that McDonald "had stepped aside from his employer's business and had entered upon the performance of an independent purpose of his own". (*Helm* v. *Bagley*, 113 Cal. App. 602 [298 Pac. 826]; see, also, *Kish* v. *California S. Auto. Assn.*, 190 Cal. 246 [212 Pac. 27]; *Chamberlain* v. *Southern California Edison Co.*, 167 Cal. 500 [140 Pac. 25]; *Slater* v. *Friedman, supra; Newman* v. *Sunde*, 23 Cal. App. (2d) 332 [73 Pac. (2d) 260]; *Martinelli* v. *Bond*, 42 Cal. App. 209 [183 Pac. 461]; *Lee* v. *Nanny*, 38 Cal. App. (2d) 90 [100 Pac. (2d) 832]; *Fuller* v. *Lindenbaum*, 29 Cal. App. (2d) 227 [84 Pac. (2d) 155]; *Lane* v. *Bing*, 202 Cal. 577 [262 Pac. 317]; *Peccolo* v. *City of Los Angeles*, 8 Cal. (2d) 532 [66 Pac. (2d) 651].)

The question of departure from the scope of employment is ordinarily one of fact. A strict concise rule may not be framed to cover all states of fact. Previous decisions may act as an advisory guide but not as an injunctive limitation, due to the varied circumstances that successive cases present. In the present case the arrangements between the employer and employee relative to the manner, method and time of work, being entirely oral, a question of fact was presented within the province of the trial judge. (*Robinson* v. *George*, 16 Cal. (2d) 238 [105 Pac. (2d) 914].)

If from the evidence offered a reasonable deduction may be drawn that the trier of the facts,—who is the judge of the weight and value of the evidence,—has reached a conclusion based upon substantial evidence, the duty of an appellate court is at an end. "When two or more inferences can be reasonably deduced from the facts, the reviewing court is without power to substitute its deductions for those of the trial court." (*Crawford* v. *Southern Pac. Co.*, 3 Cal. (2d) 427, 429 [45 Pac. (2d) 183].) " . . . any attempt on the part of an appellate court to draw an inference of fact constitutes 'a usurpation of the province of the trial court' ". (*Hamilton* v. *Pacific Elec. Ry. Co.*, 12 Cal. (2d) 598, 602

[86 Pac. (2d) 829]; see, also, *Webster* v. *Board of Dental Examiners of Calif.*, 17 Cal. (2d) 534 [110 Pac. (2d) 992].)

The judgment is affirmed.

Knight, J., concurred.

PETERS, P. J., Dissenting.—I dissent.

The trial court was presented with three main questions: (1) Was McDonald an employee of respondent or an independent contractor? (2) Was McDonald, if an employee, acting in the course and scope of his employment at the time of the accident? and (3) If McDonald was an employee and acting in the course of his employment at the time of the accident, is the respondent liable for the negligence of Krossoff? The trial court failed to make any express finding at all on the question of whether McDonald was an independent contractor or employee, but held that, assuming he was an employee, he was not acting in the course and scope of his employment at the time of the accident. The majority opinion is based on the same theory. Respondent, however, in its brief, assumes that the trial court found that McDonald was an independent contractor, and spends the major portion of its brief arguing that that question is one of fact, and that the assumed finding is supported by the evidence.

For the purposes of this dissent, it may be conceded, as contended by respondent, that the question whether a commission salesman is an employee or an independent contractor is ordinarily for the determination of the trial court. It has been held that this question is a mixed question of law and fact, and that the trial court's finding is binding on appeal if supported. (*Lee* v. *Nanny*, 38 Cal. App. (2d) 90 [100 Pac. (2d) 832]; *Counihan* v. *Lufstufka Bros. & Co.*, 118 Cal. App. 602 [5 Pac. (2d) 694]; *Barton* v. *Studebaker Corp. of America*, 46 Cal. App. 707 [189 Pac. 1025]; *Fuller* v. *Lindenbaum*, 29 Cal. App. (2d) 227 [84 Pac. (2d) 155].) For the purposes of this dissent, it may be conceded that, had the trial court found that McDonald was an independent contractor, that finding would find support in the record. It must also be conceded, however, that, had the trial court found that McDonald was an employee, that finding would also be supported by substantial evidence. (*Fischer* v. *Havelock*, 134 Cal. App. 584 [25 Pac. (2d) 864]; *Phillips* v. *Lar-*

*rabee,* 32 Cal. App. (2d) 720 [90 Pac. (2d) 820]; *Cook* v. *Sanger,* 110 Cal. App. 90 [293 Pac. 794]; *Hiner* v. *Olson,* 23 Cal. App. (2d) 227 [72 Pac. (2d) 890, 73 Pac. (2d) 945]; *California C. I. Exch.* v. *Indus. Acc. Com.,* 5 Cal. (2d) 185 [53 Pac. (2d) 758].) As already pointed out, however, and this is pointed out in the majority opinion, the trial court did not make an express finding on this point. After finding that the accident was caused by the negligence of Krossoff, and that McDonald was liable for the negligence of Krossoff, the trial court found:

"That defendant Constantine A. Krossoff was not at the time of the aforesaid collision and accident or at any time an employee or agent or servant of defendant Sigmund Eisner Company, Western, a corporation; that in driving and operating the automobile of defendant McDonald said defendant Krossoff was not acting as an agent or servant or employee or representative of said Sigmund Eisner Company, Western, a corporation. That at the time and place of the aforesaid accident defendant R. J. McDonald was not in the course of or in the discharge of any duty or duties of his employment as a salesman upon commission for said Sigmund Eisner Company, Western, a corporation, or otherwise". That finding certainly does not find that McDonald was an independent contractor—if anything, it is, by implication, a finding that McDonald was an employee but not acting in the course and scope of his employment at the time of the accident. However, in fairness to the respondent, I do not think that the finding should be distorted into a finding that McDonald was an employee. I believe that it should be held that no finding was made on this basic issue, and that the theory of the trial court was that, assuming McDonald was an employee, he was not acting in the course and scope of his employment at the time of the accident. The majority opinion properly interprets the finding in this manner.

The majority opinion holds that this finding, so interpreted, is supported by the evidence. I disagree with this holding. I believe that, as a matter of law, a traveling salesman who is an employee, with a limited and designated territory, is within the course of his employment when going to or returning from that territory by the most direct route. This rule would be clearly applicable if McDonald had a fixed permanent abode in San Francisco. (*California C. I. Exch.*

v. *Indus. Acc. Com., supra; Hiner* v. *Olson, supra; Raf-
ferty* v. *Dairymen's League Co-op. Ass'n,* (N. J.) 200 Atl.
493; *State* v. *District Court,* 141 Minn. 61 [169 N. W. 274].)
In *California C. I. Exch.* v. *Indus. Acc. Com., supra,* a
traveling salesman was on his way home from a completed
sales trip.  He stopped for the night at an auto camp where
he was asphyxiated.  In holding that his death was com-
pensable the Supreme Court stated, at page 186:
"There seems no reason for denial that the death of the
employee occurred in the course of his employment.  'As a
rule commercial travelers may be regarded as acting in the
course of their employment so long as they are traveling in
their employer's business, including the whole period of time
between their starting from and returning to their place of
business or home.'  (Bradbury on Workmen's Compensation,
p. 105.)  Within this rule the traveler, when overtaken by
night, may reasonably seek the protection of an inn and still
be regarded as acting in the course of his employment."
This, and the other cases cited, establish the rule that travel-
ing salesmen, who are employees, are acting within the course
of their employment so long as they are traveling in the
employer's business, including the whole period of time be-
tween their starting from, and returning to, their place of
business or home.  In other words, in going to his designated
district or returning therefrom, the employee is performing
an act incidental to the employment.  It is true that if the
employee does not return directly home, and engages in a
purely personal trip, this rule has no application.  Such are
the cases relied upon by respondents.  (See, *Newman* v.
*Sunde,* 23 Cal. App. (2d) 332 [73 Pac. (2d) 260]; *Helm* v.
*Bagley,* 113 Cal. App. 602 [298 Pac. 826].)

It is also well-settled that a person who is injured by the
negligence of such employee while he is returning from his
road trip or errand is entitled to recover against the em-
ployer.  (*Brown* v. *Montgomery Ward & Co., Inc.,* 104 Cal.
App. 679 [286 Pac. 474]; *Ryan* v. *Farrell,* 208 Cal. 200 [280
Pac. 945]; *Humphry* v. *Safeway Stores Inc.,* 4 Cal. App. (2d)
589 [41 Pac. (2d) 208].)

The majority opinion states that, "The purpose of the
proposed trip to San Francisco was not in the interest of
respondent company."  The point is, that the above cases
establish, as a matter of law, that in going to his designated

territory, or returning to his home therefrom, the employee traveling salesman is performing an act incidental to, and growing out of, his employment. The majority opinion, apparently in recognition of this principle of law, makes much of the fact that McDonald had no fixed abode in San Francisco. What does the uncontradicted evidence show on this point? McDonald had been in the employ of the respondent for five or six months prior to the accident. The office of the respondent was in San Francisco, and McDonald was hired in that city. His territory was in the San Joaquin Valley, Manteca being the northernmost town in his territory. At the time he was employed he lived in an apartment in a hotel at 542 Mason Street, San Francisco. To avoid double expense, he gave up his apartment when he went on the road, but he returned to San Francisco nearly every week end, and always at the end of each trip, and usually stayed at the hotel at 542 Mason Street. The respondent knew this fact. McDonald had his trunk in the basement at that address. Before going to work for respondent he had worked for another employer in San Francisco for a period of about ten years. He was born in San Francisco and testified that, "naturally I consider it my home", and again, "I considered San Francisco my home, yes sir." At the time of the accident he was proceeding on the most direct route from Manteca to San Francisco. He was a registered voter at the time of the accident and gave 542 Mason Street as his residence when he registered. When he was employed by respondent he gave the Mason Street address as his home address. He gave it as his conclusion that at the time of the accident he had no permanent address.

This evidence shows conclusively that the employee treated San Francisco as his home and that the respondent employer knew this fact. The respondent knew of the employee's custom of returning to San Francisco after every trip, and acquiesced therein. It must be held, as a matter of law, that in returning to San Francisco on the occasion in question he was within the course of his employment within the meaning of the above-cited cases.

If this conclusion is sound, and I submit that it is, then it necessarily follows that the admitted negligence of Krossoff is attributable to McDonald, as found by the trial court, and that the latter's negligence is attributable to respondent. The

court expressly found that Krossoff was driving "at the request and for and on behalf of said defendant McDonald." That finding is admittedly supported by the uncontradicted evidence. The court also found that Krossoff was not an employee of respondent and that McDonald was without authority to hire Krossoff for the trip in question. That is partially a finding of fact and partially a conclusion of law. In so far as it is a finding of fact it is unsupported by any evidence. The uncontradicted evidence is to the effect that the respondent at no time ever issued any order prohibiting McDonald from hiring a person to assist him in driving his car. In so far as the so-called finding embodies a conclusion of law it is contrary to the rule adopted in this state. The rule is well-settled in this state that in the absence of any prohibition an agent acting in the course of his employment in operating an automobile, may secure a third person to drive, and if the third person is negligent while the car is being operated in the presence and under the supervision of the agent, the employer is liable. (*Gates* v. *Daley*, 54 Cal. App. 654 [202 Pac. 467]; *Gibbons* v. *Naritoka*, 102 Cal. App. 669 [283 Pac. 845].)

The applicable principles are clearly and concisely stated in *Gibbons* v. *Naritoka, supra*, at page 673, as follows:

"The authorities are not in strict harmony as to the master's liability to third persons for the negligent acts of an unauthorized stranger procured by the employee to assist him within the scope of his employment. (45 L. R. A. (N. S.) 382, note; 13 L. R. A. (N. S.) 572, note; Am. Dec. Dig. (Master and Servant), Key Sec. 301 (2).) Clearly the master is not liable when the services of a stranger are performed out of the presence and independent of the employee, or when the services are not within the scope of the servant's employment, or when the assistance is secured contrary to the direct instructions of the master. (*Emison* v. *Wylam Ice Cream Co.*, 215 Ala. 504 [111 South. 216]; *Butler* v. *Mechanics' Iron Foundry Co.*, 259 Mass. 560 [54 A. L. R. 849, 156 N. E. 720].) Some cases go so far as to hold that the master is liable for such negligence only when there is either express or implied authority for the agent to procure assistance. (18 R. C. L. 785, sec. 245; 39 C. J. 1271, secs. 1458b–1459.)

"The liability of the master has sometimes been denied upon the specific ground that the servant was not present at the time of the performance of the tortious acts complained of. (*Blumenfeld* v. *Meyer-Schmid Grocer Co.*, 206 Mo. App. 509 [230 S. W. 132].) These cases, however, do not involve the principle of the co-operating negligence of an employee who is personally present with knowledge of the tortious acts of his assistant and possessing the ability to restrain or regulate such acts. By the weight of authority and in accordance with good reason, a master is liable to a third person for the results of the negligent acts of a stranger whose services are procured without the master's authority by the servant to assist him within the scope of his employment, under his supervision and in his presence. [Citing many cases.]" The same rule is announced in *Gates* v. *Daley, supra*.

If my analysis of the legal problems in this case is sound, the legal situation is this:

The findings that McDonald was not acting in the course of his employment at the time of the accident, and that McDonald had no authority to employ Krossoff, are unsupported by the evidence. There is no finding on the basic issue of whether McDonald was an employee or an independent contractor. The failure to find on this basic issue is, under the circumstances, reversible error. (24 Cal. Jur., p. 940, sec. 186.) In my opinion, the judgment should be reversed.

Petitions for a rehearing were denied July 19, 1941. Peters, P. J., voted for a rehearing.

Appellants' petition for a hearing by the Supreme Court was denied August 18, 1941.