Filed 12/19/24  Rauch v. Rode Bros. CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| MICHAEL RAUCH,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>RODE BROS., INC.,<br><br>        Defendant and Respondent. | A167265<br><br>(Marin County<br>Super. Ct. No. CIV2003621) |

Homeowner Michael Rauch brought suit against multiple defendants in connection with a remodeling project he undertook at his home in Tiburon, California.  He now appeals a judgment entered against him following the grant of summary judgment on his claims against one of the defendants, hardwood flooring installation company Rode Bros., Inc. (Rode), for allegedly defective work carried out by and under the direction of Rode's employee, Larry Klosowski (Klosowski).

Rauch contends there are triable issues of fact concerning Rode's liability for Klosowski's actions under the doctrine of respondeat superior and agency principles.

We reject his arguments and affirm the judgment.

1

## BACKGROUND

### 1.  Rauch's Allegations

According to the allegations of his operative complaint, Rauch hired a professional designer, Cathleen Gouveia, to oversee the remodeling project at his home, and Gouveia brought in Larry Klosowski to perform floor installation and refinishing work.  Rauch alleged Klosowski is a partial owner and vice-president of Rode, a Los Angeles-based company.  He alleged that another person, Glen Comer, doing business as Wood Floored, was also involved in performing the flooring work.

On March 2, 2020, Rauch allegedly entered into an oral agreement with both Klosowski and Rode (as well as Gouveia and Comer) to do the flooring work for $71,688.

All of these parties allegedly entered into a written contract the same date, consisting of a March 2, 2020 supplemental change order Gouveia gave Rauch reflecting a proposal for $71,688 in flooring work.  The supplemental change order is a two-page "proposal" on Gouveia's letterhead addressed to Rauch, proposing floor-refinishing work by an unspecified "Floor Artisan" for a total rate of $71,688, $11,950 of which was to be paid to her as a referral fee and $59,740 of which was to be paid to the "Floor Artisan."

On April 6, 2020, Klosowski allegedly gave Rauch a $59,740 written estimate to perform the flooring work which Rauch orally agreed to as a supplement to Gouveia's March 2, 2020 change order, and Rauch instructed Klosowski, "through Gouveia," to perform the work.  The written estimate, dated April 5, 2020, is a one-page document addressed to Rauch from "Larry

2

Klosowski." It lists a mailing address and a personal email address ([xxx]@hotmail.com) for "Larry Klosowski," and does not mention Rode.[1]

Rauch alleged Klosowski held himself out as licensed to do the work, and so did Gouveia, but Klosowski did not in fact have a valid contractor's license to do the flooring work (and neither did Gouveia). Rauch allegedly paid Klosowski $57,758 to do the flooring work but the work was defective.

Rauch filed suit against Gouveia, Klosowski and Rode in December 2020, asserting five causes of action against Rode: breach of oral contract (sixth cause of action), breach of written contract (seventh cause of action), breach of implied warranty (eighth cause of action), negligence (ninth cause of action), and fraudulent business practices in violation of the Unfair Competition Law (Bus. & Prof. Code, § 17200) based on unspecified fraudulent misrepresentations (tenth cause of action).[2]

## 2. The Summary Judgment Motion

### A. Opening Papers

Rode moved for summary judgment. It argued that the breach of contract claims (both written and oral) and the breach of implied warranty claim failed as a matter of law because Rode never entered into any contract with Rauch, written or oral. It argued the negligence claim failed as a matter of law essentially for the same reason: that is, because Rode entered into no contract with Rauch and performed no work on the project, it owed Rauch no

---

[1] According to undisputed evidence introduced later on summary judgment, the mailing address listed on the invoice is Klosowski's home address, which Klosowski also used as an office for Rode.

[2] He brought multiple claims against Gouveia and Klosowski, including four based on Klosowski's alleged lack of a valid contractor's license. Those claims are not at issue in this appeal.

duty of care. It argued the UCL claim failed as a matter of law because Rode made no representations to Rauch, false or otherwise.

In support of its motion, Rode proffered the declaration of a corporate officer (Joseph Audino) who stated that the company had nothing to do with the project and no knowledge of the alleged agreements; never entered into any contract with Rauch, written or oral, concerning the project; had no contact with Rauch about the project; made no representations to Rauch about anything; produced no estimates or proposals concerning the project; provided no labor, materials or services; submitted no invoices for any of the work; and received no payment.

Audino also stated that Klosowski did not have authority to enter into a contract with Rauch in the circumstances alleged in the complaint. In addition, he stated that Rode always prepares estimates and invoices for its work under its own letterhead ("Rode Bros., Inc."), not under "Larry Klosowski" letterhead.

Rode also proffered evidence that:

• Klosowski was not authorized to enter into contracts on behalf of Rode without authorization and without completing "internal protocols" for forming contracts (a fact it established through one of its discovery responses, to be discussed below).

• Klosowski testified in deposition he never told Audino that he was performing this job or discussed the project with him.

• Rauch did not receive any estimates or invoices for the work on Rode letterhead, a fact established by the deposition testimony of both Rauch and his girlfriend Marika Pickles (Pickles), who helped him with the project.[3]

---

[3] Rauch testified in deposition that he thought he'd seen some invoices produced in discovery that had Rode's name on them but "I didn't do a

4

Nor was there any other paperwork or correspondence for the project on Rode's letterhead.

- None of the estimates or invoices Klosowski sent Rauch even mentioned Rode: they contained only Klosowski's name, his home address in Mill Valley, California and the email address, "[xxx]@hotmail.com."

- Klosowski never told Gouveia (or Pickles) that Rode was performing the work.[4]

- At the jobsite, there were never any trucks bearing Rode's name, or workers wearing Rode clothing.

- All payments for the flooring work were made by means of checks made payable directly to Klosowski personally, not Rode.[5]

- Gouveia, not Klosowski or Rode, was the source of any impression that Rode was involved with the work. She admitted in deposition that she never saw any documents indicating that Rode was involved other than documents *she herself* generated (and that Klosowski provided no paperwork referencing Rode). She testified in deposition, however, "I know [Klosowski's] not the company. But he's . . . always been affiliated with that for a very long time." She testified, "Larry—to me—is Rode Bros. and always has been."

---

thorough review of all of that so, you know, I could be mistaken." No such invoices were introduced in opposition to summary judgment, and on appeal the parties do not rely on that portion of Rauch's deposition testimony for any purpose.

[4] No evidence was introduced with the moving papers as to whether he ever told *Rauch* that Rode was involved. But in his opposition papers, Rauch introduced his own deposition testimony admitting that he could not recall whether Klosowski ever told him this.

[5] Pickles testified in deposition that *Gouveia* asked Rauch to make the checks payable to Rode c/o Klosowski but admitted the checks were in fact made out to Klosowski directly.

Pickles testified in deposition she thought Rode was involved but only because *Gouveia* had led her to believe that.

### B. Opposition Papers

In opposition to the motion, Rauch argued there were triable issues of fact as to whether Klosowski was actually authorized to enter into the contract on Rode's behalf, defeating summary judgment on the contract claims and implied warranty claims. He also argued there were triable issues of fact as to whether Rode was vicariously liable for Klosowski's conduct under the doctrine of respondeat superior, defeating summary judgment on the negligence and UCL claims.

In support, he introduced:

• Klosowski's deposition testimony that he (Klosowski) was the general manager of Rode's San Francisco branch showroom and also used the office in his Mill Valley home to conduct business for Rode, as well as a copy of Klosowski's business card at Rode, listing Rode's license number, a business email ([xxx]@rodebros.com) and an address in San Rafael. He also introduced Klosowski's deposition testimony that he set up his "[xxx]@hotmail" email address to use for Rode business because the server for his "@rodebros.com" email was unreliable, used the Hotmail email address to conduct Rode business on a daily basis, and only used his "@rodebros.com" email about once a week.

• Payroll records showing that Klosowski was drawing a salary from Rode during all of 2020, while the project was underway.

• Public records from the California Secretary of State identifying Klosowski as a director, corporate officer (i.e., secretary) and registered agent for service of process for Rode during the period in which the 2020 remodeling project was underway, and from the Contractors State License Board

6

identifying Klosowski as a person covered under Rode's contractor's license during that period.[6]

- Klosowski's deposition testimony that Klosowski does not have a contractor's license in his own name but believed Rode's contractor's license covered him to do flooring work on his own, independent of Rode, since the state Contractors License Board listed him as a licensed contractor.

- Klosowski's deposition testimony that he is "not necessarily" required to get approval before executing contracts on behalf of Rode. Klosowski testified he was authorized to enter into contracts for Rode, that he and Audino "always go over the job before anything gets started, so it's usually with his approval that the job gets okayed," but that he doesn't "necessarily" need Audino's prior approval to enter into a contract for Rode as long as the price was consistent with Rode's internal price list, and that the internal price list is the "internal protocol" referred to in Rode's discovery response that was introduced with Rode's moving papers. He also testified he works with Audino to price and prepare a bid for jobs that are "difficult."

- Klosowski's deposition testimony that he had "rarely" taken on independent flooring work in the past, those other side jobs had been smaller and different than this project (involving just cleaning and recoating floors), and he never told Rode about those other side jobs either.

- Klosowski's deposition testimony that he had worked on four or five previous projects with Gouveia, all for Rode.

- Evidence that one of the subcontractors Klosowski hired, Glen Comer, frequently worked with Klosowski for Rode.

---

[6] He also introduced Klosowski's deposition testimony that he (Klosowski) wasn't aware he was the company's secretary but was aware he was listed under Rode's contractor's license.

7

•      Copies of estimates and invoices for the flooring work, all sent under Klosowski's personal name, home mailing address and/or Hotmail email address and none mentioning Rode.

•      Copies of Rauch's checks for the flooring work, all made payable to "Larry Klosowski."

•      Copies of personal checks Klosowski wrote for payments to Comer and another subcontractor working on the project (Gabriel Fernandez), drawn from a personal checking account listing Klosowski's home address.

•      Gouveia's deposition testimony that Klosowski met with her and Pickles at Rode's office in San Rafael at an unspecified time for an unspecified purpose.[7]

•      Evidence that Gouveia, Comer and Rauch himself all subjectively believed that because Klosowski was involved in the project, so was Rode. Specifically: (1) Gouveia testified she thought the work was being performed by Rode, Klosowski never told her he was doing the work independently, and that it was surprising to learn he was claiming he did the work independently because she'd never known him to do anything like that before. She testified that "Larry and Rode Brothers to me is the same. It's one and the same. . . . [H]e's always been part of Rode Brothers." (2) Comer also testified he thought that because he was working for Klosowski he was working for Rode; like Gouveia, he testified in deposition "it was the same thing." (3) Rauch testified in deposition that he too thought Klosowski and

_____

[7] In his appellate brief Rauch asserts Klosowski "invited" them to Rode's "showroom" in San Rafael to look at flooring samples and discuss the potential work. The record citations he provides do not support that factual representation.

8

the subcontractors Klosowski hired were all working for Rode but couldn't remember Klosowski ever telling him that, orally or in writing. He also testified, "I don't think [Klosowski] ever specifically said I am Rode Bros., but I got the impression that, you know, this was his company."

- Copies of several emails *Gouveia* wrote in which she indicated, consistent with her beliefs, that Rode was involved in the project. One was an email she sent to Rauch transmitting Klosowski's project proposal, captioned under the subject line "Relaying Information *From Rode Bros. Floors*." (Italics added.) Another was a billing email she sent to Rauch later on, stating that "the total for your floors is $59,740 *to be paid to Rode Bros. c/o Larry Klosowski*." (Italics added.) A few months later (in July 2020), she sent an email to Pickles, stating, "Larry asked me to request from you and Mike a progress payment of $7981.50 made out to Larry Klosowski *c/o Rode Bros*."[8] (Italics added.) Then later (in September 2020) she forwarded an invoice from Klosowski to Pickles, stating "Larry is requesting a progress payment of $6000 at this time. . . . You can make the check payable to Larry on this one." When Pickles asked, "What is Larry's name again or company name for check?," Gouveia responded, "*The company is Rode Bros*. but you can make the check out to him." (Italics added.)

- Rauch also introduced Klosowski's admissions in deposition that there were two times Klosowski was *copied* on an email from Gouveia

---

[8] Asked about this email in deposition, Gouveia testified she couldn't remember if Klosowski specifically asked for the check to be made out this way ("c/o Rode Bros.") or whether she just inferred that was how the check was supposed to be written. She testified, "I just know Larry and Rode Bros. has always been the same thing to me" and "All I know is that . . . Larry asked me to get a progress payment from [Rauch and Pickles], so that's what this is."

9

indicating that Rode was involved in the project and did not correct her. There is no indication in the record that Rauch was copied on or received either of these emails. One was an email Gouveia sent to another contactor that referred to Klosowski as "Larry Klosowski from Rode Brothers," which he testified he didn't correct because Gouveia's email coordinating that other contractor's work had nothing to do with him and "I didn't feel it was necessary to do so." The other was a work schedule she prepared that referred to "Rode Bros. floor work." Klosowski testified he didn't correct the statement in the schedule either and that "I don't know why she put that in. She knew I was being paid directly." He testified he never told Gouveia it was him, not Rode, doing the work because he didn't think it was important to clarify that for her. He testified, "she knew that I was being paid directly from the homeowner. She saw copies of the checks that were written to me, so I didn't believe there was any point" in doing so.

- Invoices from some suppliers, some but not all of which mentioned Rode: (1) one invoice from a supplier (Galleher LLC) identifying Rode (in Los Angeles) as the customer, along with four others from the same supplier listing *Klosowski's* name and home address in Mill Valley and a cancelled check to the supplier drawn from Klosowski's personal checking account listing his home address; (2) a $153.66 invoice from another supplier (W.D. Lockwood) identifying "Rode Bros." and "Larry Klosowski" as the customer, listing Klosowski's home address in Mill Valley and his Hotmail email address; (3) a $91.56 invoice from OnlineMetals.com identifying the billing and shipping address as "Larry Klosowski, Company Name: Rode Bros. Floors" and listing Klosowski's home address in Mill Valley and a phone number (415-[xxx]-[xx]98); and (4) an invoice from an unspecified

10

supplier identifying "Larry Klosowski" as the customer, at Rode's business address in San Rafael, California.

- And, finally, a November 18, 2020 demand letter Rauch's lawyer sent to Klosowski at his home address and Hotmail email address, asserting that Klosowski had done the work without a valid contractor's license and had failed to give Rauch a written contract for the work, along with Klosowski's response, transmitting a copy of online search results from the Contractor's State License Board showing him listed under Rode's contractor's license.

### C. Reply Papers

In reply, Rode introduced Klosowski's deposition testimony that he took on this project independently of Rode because it was during the early days of the pandemic in 2020, and he was worried he wouldn't be earning commissions revenue from Rode, which was an important supplement to his salary; the project began as a small job, and he would take on smaller jobs without Rode's involvement to help pay his bills; and he performed the job without Rode's knowledge. Rode also introduced Klosowski's deposition testimony that when he contracts for work on Rode's behalf without prior approval, he forwards the information to Rode for inputting into Rode's system, payments for all such work are by means of checks made out to Rode, and he deposits such payments into Rode's bank account and also forwards a copy to Rode's Los Angeles office.

### D. Ruling

The trial court rejected Rauch's claims for breach of contract (six and seventh causes of action) and breach of implied warranty (eighth cause of action) because, as a matter of law, there was no contract between Rauch and Rode. It ruled that Rauch "has failed to raise a triable issue of material fact

11

regarding the existence of a contract between [himself] and Rode.  There is no evidence that Rode was a contracting party.  Rode did not submit a proposal for the job, did not sign a contract for the job, and was not paid for the job."

The court also rejected Rauch's contention that Rode, as a principal, was responsible for the contract entered into by its agent, Klosowski.  It ruled that "the evidence reflects that Klosowski was doing this job on his own, separate from his work at Rode and with the mistaken belief he could use Rode's license for independent work.  There is no evidence that Klosowski ever held himself out as a representative of Rode when he contracted with [Rauch], or that [Rauch] relied on any representations by Klosowski that he was working on behalf of Rode."  "[A]t most," it ruled, there was evidence that Gouveia herself "was under the mistaken belief based on her past interactions with Klosowski that Rode would be the party doing the work" but that "[her] belief, and any representations she made to [Rauch or his girlfriend] about Rode's involvement, are insufficient to bind Rode."

The court ruled that Rode was entitled to judgment as a matter of law on the negligence cause of action (ninth cause of action) because Rauch failed to raise a triable issue of fact under the doctrine of respondeat superior, for the same reasons.  It reasoned that the undisputed evidence "shows that Klosowski was not engaged in an enterprise undertaken by his employer but was rather engaged in activity for his own personal financial benefit," citing *Baptist v. Robinson* (2006) 143 Cal.App.4th 151, 161-162 (*Baptist*).

The trial court ruled Rode was entitled to judgment as a matter of law on the fraudulent businesses claim (tenth cause of action), because there was no evidence of any false representation by Rode, and also because the doctrine of vicarious liability is inapplicable to claims under the UCL.

Rauch appealed from the summary judgment order, and we subsequently entered an order amending the court's ruling to declare that judgment is entered *nunc pro tunc* in favor of Rode.

## DISCUSSION

Rauch argues: (1) there are numerous triable issues of material fact showing that Rode is responsible for Klosowski's negligence under the doctrine of respondeat superior; (2) there are triable issues of material fact showing Rode is responsible for Klosowski's negligence, breaches of contract and breaches of implied warranty because he was Rode's ostensible agent; and (3) the trial court improperly determined triable issues of fact and made errors of law under the doctrine of respondeat superior and agency principles. He also asserts that under Labor Code section 2750.5, Klosowski was working for Rode on the project.

### I.

"Summary judgment is governed by well-established standards. ' "Summary judgment is properly granted when there is no triable issue as to any material fact and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) A defendant seeking summary judgment bears the initial burden of proving the 'cause of action has no merit' by showing that one or more elements of plaintiff's cause of action cannot be established or there is a complete defense. (Code Civ. Proc., § 437c, subds. (a), (o)(2); [citations].) Once the defendant's burden is met, the burden shifts to the plaintiff to show that a triable issue of fact exists as to that cause of action." ' " (*Alameda Health System v. Alameda County Employees' Retirement Assn.* (2024) 100 Cal.App.5th 1159, 1173 (*Alameda Health System*).)

"In reviewing a trial court's ruling on a motion for summary judgment, we apply a de novo standard of review, 'considering all the evidence set forth in the moving and opposing papers except that to which objections were made and sustained,' 'liberally constru[ing] the evidence in support of the party opposing summary judgment,' and 'resolv[ing] doubts concerning the evidence in favor of that party.  [Citation.]' " (*Bowen v. Burns & McDonnell Engineering Co., Inc.* (2024) 103 Cal.App.5th 759, 766; accord, *Alameda Health System*, *supra*, 100 Cal.App.5th at p. 1174.)  "We will find no error in a trial court's grant of summary judgment 'if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'  (§ 437c, subd. (c).)" (*Bowen*, at p. 766.)  "Summary judgment is no longer a disfavored procedure, but 'is now seen as "a particularly suitable means to test the sufficiency" of the plaintiff's or defendant's case.' " (*Alameda Health System*, at p. 1174.)

" ' "As with an appeal from any judgment, it is the appellant's responsibility to affirmatively demonstrate error and, therefore, to point out the triable issues the appellant claims are present by citation to the record and any supporting authority." ' " (*Franklin v. Santa Barbara Cottage Hospital* (2022) 82 Cal.App.5th 395, 403.)  "Mere suggestions of error without supporting argument or authority other than general abstract principles do not properly present grounds for appellate review." (*Department of Alcoholic Beverage Control v. Alcoholic Beverage Control Appeals Bd.* (2002) 100 Cal.App.4th 1066, 1078.)  An appellant must "convince us, by developing his arguments, stating the law, and calling out relevant portions of the record, that the trial court committed reversible error." (*Bishop v. The Bishop's School* (2022) 86 Cal.App.5th 893, 910.)

## II.

### *Respondeat Superior*

Rauch argues, first, that there is a triable issue of material fact as to whether Klosowski's conduct was within the course and scope of his employment with Rode, and thus whether Rode is vicariously liable for Klosowski's alleged negligence. Having independently reviewed the evidence submitted in support of and in opposition to the motion, we disagree.

### A. Legal Principles.

Under the doctrine of respondeat superior, " 'an *employer* may be held vicariously liable for torts committed by an employee within the scope of employment.' [Citation.] The doctrine contravenes the general rule of tort liability based on fault. [Citation.] Under certain circumstances, the employer may be subject to this form of vicarious liability even for an employee's willful, malicious, and criminal conduct. [Citation.] Three policy justifications for the respondeat superior doctrine have been cited— prevention, compensation, and risk allocation. They do not always apply." (*Patterson v. Domino's Pizza, LLC* (2014) 60 Cal.4th 474, 491.)

The doctrine does not apply, however, "where the misconduct does not arise from the conduct of the employer's enterprise but instead arises out of a personal dispute." (*Farmers Ins. Group v. County of Santa Clara* (1995) 11 Cal.4th 992, 1006 (*Farmers*).) "[A]n employer will not be held vicariously liable where . . . ' "it clearly appears that neither directly nor indirectly could [the employee] have been serving his employer" ' " at the time of the alleged tort. (*Id*. at p. 1008.) "In such cases, the risks are engendered by events unrelated to the employment, so the mere fact that an employee has an opportunity to abuse facilities . . . necessary to the performance of his or her duties does not render the employer vicariously liable." (*Id*. at p. 1006;

15

accord, *Slater v. Friedman* (1923) 62 Cal.App. 668, 671-672 (*Slater*) [no vicarious liability if employee is "pursuing his own ends exclusively" even if alleged tort "could not have been committed without the facilities afforded to the [employee] by his relation to his [employer]"]; *Musgrove v. Silver* (2022) 82 Cal.App.5th 694, 708 (*Musgrove*) ["[A]n employee's conduct is not within the scope of employment merely because he 'use[s] . . . property or facilities entrusted to him by' his employer"].)

The "scope of employment" issue arises in many different factual contexts, such as whether an employee was on or off duty at the time of committing an alleged tort (see, e.g., *Marez v. Lyft* (2020) 48 Cal.App.5th 569 (*Marez*) [accident involving employee of ride-share company driving company-loaned car off-hours while returning home from another job]; *Musgrove, supra,* 82 Cal.App.5th at pp. 700, 713 [personal chef who furnished drugs and alcohol after working hours to employer's executive assistant while on luxury trip]), or whether an alleged tort committed while an employee is working deviates from their employment duties to such an extent that it cannot be said to arise from pursuit of the employer's enterprise (see, e.g., *Farmers, supra,* 11 Cal.4th 992 [sexual harassment committed during work hours at defendant's workplace]).  The issue here, however, is which "enterprise" is liable for negligently performed work.  That is to say, the issue is whether an employee was performing work on behalf of his regular employer or on behalf of an independent, side venture.

The parties cite and discuss only two cases addressing this context: *Baptist, supra,* 143 Cal.App.4th 151 which *affirmed* summary judgment for an employer in this context, and *PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro, LLP* (2007) 150 Cal.App.4th 384 (*PCO*)

16

which *reversed* summary judgment for an employer. Both cases turn principally on their facts, and we discuss each in turn.

*Baptist* held that a winery was not vicariously liable for a car accident involving one of its employees who was driving to pick up grapes to make his own wine label, even though the employee was allowed to make small batches of wine for personal use and was using some of the winery's equipment (some wine barrels) to transport the grapes. (See *Baptist*, *supra*, 143 Cal.App.4th at pp. 162-169.) The court noted that nobody at the winery had given him permission to use the equipment or knew he was doing that, and he did not tell anyone at the winery about the accident because he didn't think it concerned the winery because he was not working for the winery at the time of the accident. (*Id*. at p. 163.) The court concluded that although the employee was traveling to pick up grapes, "he was not ' "engaged in the enterprise undertaken by his employer," ' but rather was procuring grapes for making his own stock of wine." (*Ibid*.) It explained, "He was not on any 'special errand' for his employer, but was on a personal errand for his own benefit on his own time. His trip . . . was not in pursuit of his employment duties and responsibilities as assistant winemaker at the Winery. He had not yet started his work day for the Winery. [Citation.] Nor was this a situation where the employee was attending to his own business and the business of his employer at the same time. [Citation.] [His] wine was for his own use and for gifts to family and friends. It was not distributed or sold through the Winery and did not produce any profit for the Winery business. In sum, the 'main purpose' of [the employee's] trip to Gilroy . . . was not to further the employer's enterprise, but to procure grapes for himself." (*Ibid*.)

*Baptist* also rejected the plaintiff's arguments that there were multiple triable issues of fact, including as to whether the employee's personal

17

winemaking benefitted the employer in various ways so as to create vicarious liability. (See *Baptist, supra*, 143 Cal.App.4th at pp. 163-169.) For example, it held the fact that the employee's personal winemaking helped him improve his winemaking skills was "not the type of tangible benefit that can provide the nexus necessary to bring [his] conduct at the time of the accident within the course and scope of his employment," because "any benefit to the Winery from [his] improving his skills by making his own wine could be derived only indirectly and over time." (*Id*. at pp. 164, 165.) The employee "was . . . engaged in an errand of his own at the time of the accident" and so "[e]ven if there was some benefit the employer might ultimately derive from [him] improving his own winemaking abilities, the purpose of his trip . . . was purely personal and his employer thus cannot be vicariously liable." (*Id*. at pp. 165-166.) *Baptist* also rejected as "entirely speculative and thus . . . 'insufficient to establish a triable issue of material fact' " the plaintiff's contention that the employee's side winemaking venture could generate a profit for the winery. (*Id*. at p. 166.)

By contrast, *PCO, supra,* 150 Cal.App.4th 384, reversed a grant of summary judgment to a law firm and one of its non-equity partners. The partner, Shapiro, had allegedly assisted associates of a client he had represented in criminal proceedings in secreting funds the client had unlawfully obtained. (*Id*. at pp. 388-389.) The plaintiffs contended that in representing the client and arranging to take the client's funds, Shapiro was acting on behalf of the law firm, whereas the firm contended Shapiro had been acting on behalf of a criminal law practice he maintained separate and apart from the law firm. (*Id*. at p. 389.) The trial court granted summary judgment for the law firm on the ground that when Shapiro participated in the removal and use of cash from the client's residence he was acting outside

18

the scope of his duties as a partner of the law firm. (*Id.* at p. 390.) The appellate court reversed because, despite undisputed evidence that the monies paid to date for the representation had been payable directly to Shapiro and deposited into his personal bank accounts, the plaintiffs had raised a triable issue of fact by submitting correspondence and records of court appearances indicating Shapiro had been acting on behalf of the firm when he represented the client.[9] (*Id.* at pp. 389, 392.) Based on that evidence, the court observed, a reasonable trier of fact could find Shapiro acted in his capacity as a member of the law firm and at the client's request to protect the funds, from which the client's bail and the firm's legal fees would be paid. (*Id.* at p. 390.) It reasoned that "both are activities 'typical of or broadly incidental' to the practice of a white-collar criminal defense lawyer [citation] and therefore sufficient to render the [law] [f]irm liable under the doctrine of respondeat superior." (*Id.* at p. 394.)

" 'Ordinarily, the determination whether an employee has acted within the scope of employment presents a question of fact; it becomes a question of law, however, when "the facts are undisputed and no conflicting inferences are possible." ' " (*Farmers, supra,* 11 Cal.4th at p. 1019.) As next discussed, that is the case here.

---

[9] The evidence also included the firm's website promoting Shapiro as head of its white-collar criminal defense practice, a retainer agreement between the client and the firm relating to the criminal charges against the client, bills for outstanding costs sent by the firm to the client and Shapiro's use of the firm's letterhead in corresponding with the federal prosecutor about the client's criminal case. (*PCO, supra,* 150 Cal.App.4th at pp. 392-393.)

19

### B.    Rode's Evidence

The trial court correctly concluded that Rode's evidence demonstrated that Klosowski was not acting within the course and scope of his employment when he performed the flooring work for Rauch.

Here, as in *Baptist*, Rode's evidence showed that Klosowski carried on the flooring work as a personal pursuit, wholly independent of his work for Rode.  Its evidence demonstrated there was no contract of any kind between Rode and Rauch for the flooring work; the estimates, invoices and payments were in Klosowski's name alone; Rode was not compensated for the work and knew nothing about it; Klosowski did not follow internal protocols for treating this as a contract he secured for Rode (such as using Rode letterhead, entering the contract into Rode's system and depositing payments into Rode's bank account); and Klosowski undertook the work not as part of his job responsibilities but for his own personal purposes.  In these circumstances, Rode carried its burden as the moving party, and the burden shifted to Rauch to show a triable issue of one or more material facts bearing on whether Klosowski was acting in the course of his employment for Rode. (See *Baptist*, *supra*, 143 Cal.App.4th at p. 163.)  Other authorities are in accord, and Rauch does not meaningfully distinguish any of them.[10]  (See *Marez*, *supra*, 48 Cal.App.5th at p. 582 [ride-share operator not vicariously

---

[10]  At best, he asserts that, unlike in *Baptist* and *Marez*, there is evidence Klosowski procured the work through Gouveia, "who had hired Rode multiple times before" and so "it is at least inferable that Rode benefited from Klosowski maintaining such a commercial relationship with Gouveia."  We are not persuaded.  The point is supported by no discussion of any legal authority and warrants no discussion.  Further, it is precisely the kind of intangible, speculative "benefit" that *Baptist* held insufficient to withstand summary judgment.  (See *Baptist*, *supra*, 143 Cal.App.4th at pp. 164-166.)

liable for accident involving employee driving company-loaned car; evidence was undisputed driver "was engaged in a purely personal activity at the time of the accident" and so there was "no connection" between his actions at the time of the alleged tort and employer's business]; *Slater*, *supra*, 62 Cal.App. 668 [taxi company not vicariously liable for accident where evidence was undisputed cab driver picked up passengers after working hours for personal gain and there was no evidence of any benefit to taxi company; affirming order denying new trial and judgment for employer after bench trial].)

### C.    Rauch's Evidence

We also agree with the trial court that Rauch failed to submit sufficient evidence to create a triable issue of fact on this issue.

Relying on *PCO*, Rauch contends that the absence of any payment to Rode is not dispositive of the issue.  He asserts there is a triable issue of fact as to whether Klosowski was acting in the scope of his employment for Rode based primarily on evidence that Klosowski was an employee and officer of Rode at all times, used Rode's license to do the work, carried out a line of work identical to that of his employer, and used Rode's "normal channels of . . . business" to carry out the work (including Rode's showroom, vendors and subcontractors); Klosowski failed to correct statements by Gouveia to third parties that Rode was the contractor on the job; and the mailing address on the written estimate Klosowski gave Rauch was Klosowski's home address that Klosowski also used to carry out business for Rode.

We are not persuaded.  Using an employer's resources does not make an employer vicariously liable (*Musgrove*, *supra*, 82 Cal.App.5th at p. 708; *Slater*, *supra*, 62 Cal.App. at pp. 671-672) nor does working in the same line of business, as *Baptist* illustrates.  The issue, as in *Baptist* and *PCO*, is whether the employee was acting *in pursuit of the employer's interests* at the

21

time of the tort or in pursuit of a side business. "[T]he dispositive question is what was the primary purpose of the activity that produced the injury." (*Baptist*, *supra*, 143 Cal.App.4th at p. 165; accord, *PCO*, *supra*, 150 Cal.App.4th at p. 394 [issue is whether reasonable jury could conclude employee's actions were intended "at least indirectly to serve the interests of [employer]"].)

Rauch cites no evidence from which a trier of fact could conclude that Klosowski was working *for Rode* when he performed the flooring work rather than for himself. Unlike in *PCO*, there is no evidence of any contract between Rode and Rauch, no evidence Klosowski did anything in Rode's name or on its letterhead, and no evidence from which a trier of fact could infer that Klosowski made any attempt to get Rode paid for the work he personally performed. Moreover, Rode introduced undisputed evidence about the purpose of this work: Klosowski testified he picked up the work as a side job during the pandemic to earn extra income.

At best, Rauch points to some evidence that third parties, including Gouveia, *thought* Rode was involved in the flooring work (based only on their *past* experiences with Klosowski), and that Klosowski thought he could operate *independently* under Rode's contractor's license. But Rauch cites no legal authority suggesting such circumstances are of any legal significance for purposes of determining whether Klosowski's torts were committed within the actual course and scope of his employment for Rode.[11]

---

[11] We note there is no evidence Rode knew and allowed Klosowski to use its contractor's license for the flooring work at issue here, nor indeed for any work that inured solely to Klosowski's financial benefit. And even if there had been such evidence, it would not be dispositive. Even the holder of a professional license who *knowingly* allows a third party to operate under its license is not absolutely liable for the third party's conduct. (*Associated*

22

Although Rauch does not focus on them, we also note that some of the third-party invoices he introduced in opposition to summary judgment contain scattered references to Rode. Rauch wisely does not contend that a handful of documents from other contractors creates a triable issue of fact.[12]

Accordingly, Rauch has failed to demonstrate the trial court erred in granting judgment as a matter of law for Rode on the negligence cause of action under respondeat superior principles.

### III.

### *Agency*

Next, Rauch argues there are triable issues of material fact showing Rode is responsible for Klosowski's negligence, breaches of contract and breaches of implied warranty because he was Rode's *ostensible* agent. As such, Rauch argues, he had ostensible authority to be hired and work on the project on Rode's behalf.

There are two types of agency under California law: actual and ostensible. Actual agency exists "when the agent is really employed by the principal." (Civ. Code, § 2299; see also *id.*, § 2316 ["[a]ctual authority is such

---

*Creditors' Agency v. Davis* (1975) 13 Cal.3d 374, 402.) Rather, "the fact that the license is so used [with permission] is one factor to be considered in determining whether there was an ostensible agency" (*ibid.*), which is a separate theory we address *infra*.

[12] In light of the undisputed evidence we have discussed, including that all the invoices and estimates for the flooring work were in Klosowski's personal name, there were never *any* communications by Rode *or* Klosowski to Rauch or to those working on Rauch's behalf (i.e., Gouveia and Pickles) that Rode was the flooring contractor Rauch had hired, no contract between Rode and Rauch, and undisputed evidence Rode had no knowledge of the project whatsoever, no rational jury could infer on the basis of a handful of unauthenticated third-party invoices that Klosowski undertook this project as part of his job responsibilities for Rode.

as a principal intentionally confers upon the agent, or . . . allows the agent to believe himself to possess"].) By contrast, ostensible agency exists "when the principal intentionally, or by want of ordinary care, *causes a third person to believe another to be his agent who is not really employed by him*." (*Id.*, § 2300 (italics added); see also *id.*, § 2317 ["[o]stensible authority is such as a principal, intentionally or by want of ordinary care, causes or allows a third person to believe the agent to possess"].)

Below, the only agency theory Rauch raised in opposition to the summary judgment motion was that Klosowski had *actual* authority to contract, and did contract, on Rode's behalf, but he does not reprise that argument on appeal and thus has abandoned it. He did not oppose the summary judgment motion in the trial court on a theory of ostensible agency, and it is too late for him to do so now. "In a summary judgment appeal, a party is ordinarily not permitted to change her position and adopt a new and different theory." (*Olson v. La Jolla Neurological Associates* (2022) 85 Cal.App.5th 723, 739 [apparent agency theory not raised in opposition to summary judgment held forfeited]; see also, e.g., *Nicoletti v. Kest* (2023) 97 Cal.App.5th 140, 147 ["[b]ecause [appellant] did not make the argument in the summary judgment proceedings below, the argument is forfeited on appeal"]; *Baptist*, *supra*, 143 Cal.App.4th at p. 171.) This is especially so where, as here, the new theory turns on issues of fact not presented below. (*LaChapelle v. Toyota Motor Credit Corp.* (2002) 102 Cal.App.4th 977, 983; see *Kaplan v. Coldwell Banker Residential Affiliates, Inc.* (1997) 59 Cal.App.4th 741, 748 [existence of ostensible agency is question of fact].)[13] We thus decline to consider the ostensible agency theory.

---

[13] Ostensible agency must rest on actions undertaken *by the principal* that mislead a third party, not actions undertaken by the ostensible agent.

## IV.

### *Labor Code Section 2750.5*

Finally, Rauch argues that Klosowski is presumptively Rode's employee on the project under Labor Code section 2750.5.  That statute provides, in relevant part, "There is a rebuttable presumption affecting the burden of proof that a worker performing services for which a license is required pursuant to Chapter 9 (commencing with Section 7000) of Division 3 of the Business and Professions Code, or who is performing such services for a person who is required to obtain such a license is an employee rather than an independent contractor."  (Lab. Code, § 2750.5.)

As Rode points out, this theory was not raised below either and so it too is forfeited.  We decline Rauch's invitation to consider it for the first time on appeal.

Finally, Rauch asserts that the trial court committed numerous errors of law, and improperly weighed the evidence.  Our independent review of the record persuades us that the material evidence concerning the legal issues Rauch has raised on appeal was not in dispute nor subject to conflicting inferences, and judgment for Rode was warranted as a matter of law for the reasons already stated.

### DISPOSITION

The judgment is affirmed.  Respondent shall recover its costs.

---

(See Civ. Code, §§ 2300, 2317; *Emery v. Visa Internat. Service Assn.* (2002) 95 Cal.App.4th 952, 961.)  Rauch cites no evidence that Rode did anything to create the impression that Klosowski had authority to enter into the flooring contract on Rode's behalf.

_____

STEWART, P. J.

We concur.

_____

MILLER, J.

_____

DESAUTELS, J.

*Rauch v. Rode Bros., Inc.* (A167265)